(April 4, 1978)

■ The People of the State of New York, Respondent, v John Dean, Appellant.—Judgment, Supreme Court, Bronx County, rendered on September 7, 1976, convicting defendant after a jury trial of manslaughter in the first degree and sentencing him to a term of 5 years to 18 years, is affirmed. The facts bearing on the issue discussed in the dissenting opinion are not in serious question. A time came when the defendant was arrested in connection with the shooting of a storekeeper, resulting in his death, which apparently occurred during an attempted robbery. *Miranda* warnings were given by the police to the defendant who made an exculpatory statement in which he acknowledged his presence in the store when the shooting occurred, stated that two other individuals were involved in the criminal act, and denied his own culpability. Thereafter, and pending the arrival of an Assistant District Attorney at the station house, the defendant was asked from time to time to describe the two individuals whom he said were responsible for the shooting. On the District Attorney's arrival, he also advised the defendant of his rights. The following thereupon occurred: "Q: Now, look, you have a right not to say anything to me. You have a right to remain silent. Do you understand that? A: Yes, I rather do that. Q: You rather remain silent? A: Yes. Q: You rather not say anything until you speak to an attorney? A: Yes." The questioning ceased and the defendant was placed in a holding pen at the station house. Later in the afternoon, not having been further questioned by anyone, the defendant volunteered that he might know where one of the other two men lived, and after being readvised of his rights, went with the police to an apartment where five people were arrested, one of whom matched a description previously given by the defendant. The District Attorney returned to the station house and again informed the defendant of his rights, after which the defendant made the inculpatory statement primarily in issue here. We do not agree with our dissenting brother that these facts, clearly established by the record, involve a violation of the principle set forth by the Court of Appeals in *People v Buxton* (44 NY2d 33, 38). In *Buxton*, the court held (p 38): "when a suspect makes known his desire for an attorney at the time of his arrest, upon reaching the station house the police may not immediately and actively seek a waiver of this right and then proceed to interrogate him in the absence of counsel." Under the facts disclosed here, the defendant was not questioned after he had indicated to the District Attorney his wish not to answer questions in the absence of an attorney. The developments that led to his

ultimate confession were initiated by his volunteered offer to assist the police in locating those whom he claimed to be solely responsible for the crime. Following his active assistance, it was certainly reasonable for the District Attorney to conclude that the defendant might now be willing to respond to questions with regard to what occurred, to read him his warnings, and to secure his voluntary statement. A clear distinction was drawn in *Buxton* between the situation of a suspect who has asserted his right to remain silent, which is quite clearly what occurred here, and one who has specifically stated that he wants an attorney. Where the suspect has simply expressed a wish to remain silent, he may thereafter be questioned upon repetition of the *Miranda* warnings "provided that the subsequent statement is not the product of 'continued importunity or coercive interrogation in the guise of a request for reconsideration' ". *(People v Buxton, supra,* p 37.)* Where the suspect has asked for an attorney, however, the interrogation must cease until an attorney is present. Even where there is a request for an attorney, however, the rule does not render "inadmissible all statements made after the request for counsel. The defendant may make a spontaneous admission or simply change his mind and voluntarily make a statement." *(People v Buxton, supra* p 37.)* The later interrogation by the District Attorney may well have been improper if the defendant had asked for an attorney, but that issue is not presented here. This defendant made no such request and the sequence of events leading to his confession are fully consistent with the principles set forth in *Buxton* as well as in *People v Jackson* (41 NY2d 146, 152). Concur—Murphy, P. J., Lupiano, Lane and Sandler, JJ.; Markewich, J., dissents in a memorandum as follows: I would reverse and grant the motion to suppress defendant-appellant's statement to police, vacate his plea of guilty, and dismiss the indictment. This rather talkative defendant said nothing inculpatory to police from the time he was taken into custody and given the requisite warnings until approximately three and one-half hours later, when an Assistant District Attorney arrived to take a statement. Defendant stated that he wished to remain silent and would rather not talk unless he spoke to a lawyer first. Thereafter, the warnings were repeated several times, interspersed with questions to which noninculpatory answers were given. He said nothing inculpatory until that evening, when he made a statement, and then talked to the District Attorney. No lawyer was ever called. "When a suspect makes known his desire for an attorney at the time of his arrest * * * the police may not immediately and actively seek a waiver of this right and then proceed to interrogate him in the absence of counsel." *(People v Buxton,* 44 NY2d 33, 38).